*AC*

# United States Bankruptcy Court
NORTHERN DISTRICT OF ILLINOIS
219 S. Dearborn Street
Chicago, IL 60604

**Kenneth S. Gardner**, Bankruptcy Clerk

Date _____ August 25, 2008

Michael Dobbins, Clerk
United States District Court
Northern District of Illinois
219 S Dearborn Street
Chicago, IL 60604

**FILED**

AUG 1 5 2008 **TC**
8-25-2008
**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

| | |
|---|---|
| Case Number | 02 B 48191 |
| Case Name | UAL, Inc |
| Notice of Appeal Filed | 8/6/2008 |
| Appellant | Phyllis Carr |

Dear Sir:

Pursuant to **Bankruptcy Rule 8007** transmitted herewith is the Record on Appeal. The Record on Appeal consist of:

| | | | |
|---|---|---|---|
| ✓ | Transmittal Letter and Civil Cover Sheet | ✓ | Notice of Appeal |
| | Designation and Statement of Issues | | Copy of Documents Designated |
| | Transcript of Proceeding | | Exhibits |
| | In Forma Pauperis | | Expedited Notice of Appeal |

Additional Items Included

✓ appellee's designation of record, objection to motion for leave to file late appeal. copy of docket via e-mail. *Motion for Leave to Appeal*

☐ Total Volumes Transmitted

The following items will be transmitted as a supplemental to the Record on Appeal

☐ _____

**08CV4843
JUDGE DARRAH
MAGISTRATE JUDGE LEVIN**

| | | | |
|---|---|---|---|
| Previous D C Judge | darrah/levin | Case Number | 03 C 2232 |

By Deputy Clerk _____

Revised 03/26/06sj

**PHYLLIS CARR**
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150
Tel/Fax: 1.888.379.6660
Email: ghlaw@pacbell.net

Creditor In Pro Per

*[RECEIVED stamp: UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS, AUG 6 2008, KENNETH S. GARDNER CLERK, PS REP. - MBM]*

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:                                    ) Case No.: 02-B-48191
                                          )
UAL INC. et al.,                          ) **NOTICE OF APPEAL**
                                          )
                    Debtor                )
                                          )

**08CV4843**
**JUDGE DARRAH**
**MAGISTRATE JUDGE LEVIN**

---

Notice is hereby given that PHYLLIS CARR hereby appeals to the United States Court of

Appeals for the 7th Federal Circuit from the Order entered in this action on July 16, 2008.

Dated: August 5, 2008

_____
PHYLLIS CARR
Appellant/Creditor in Pro Per



PHYLLIS CARR
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150
Tel/Fax: 1.888.379.6660
Email: ghlaw@pacbell.net
Creditor in Pro Per

RECEIVED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
AUG 6 2008
KENNETH S. GARDNER, CLERK
PS REP. - MSM

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## CHICAGO DIVISION

In re:

UNITED AIR LINES, INC., et al.,
Debtor

)   Case No.: 02-B48191
)   Chapter 11
)   NOTICE OF MOTION AND MOTION
)   FOR LEAVE TO FILE NOTICE OF
)   APPEAL AND APPEAL
)   Date: 8/20/08
)   Time: 0930
)   Dept.: TBD
)   Judge: Eugene Wedoff
)   Trustee: N/A
)

PLEASE TAKE NOTICE that on the first available date, or as soon thereafter as counsel may be heard, in the United States Bankruptcy Court, Northern District of Illinois, the creditor, PHYLLIS CARR, will move and hereby does, move this Court for an Order granting her an extension of time to file a timely Notice of Appeal based on good cause and excusable neglect, pursuant to the Federal Rules of Appellate Procedure Rule 4, Federal Rule 60 and the Federal Rules of Bankruptcy Procedure, Rule 8001-8003.

Carr respectfully requests that the Bankruptcy Court grant her an extension of time to file based on excusable neglect as she recently learned her attorney has been under treatment for mental disability and has not been able to reach her attorney and said Notice of Appeal was not

-1-

CREDITOR'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE LATE APPEAL
Case #02B48191

filed within the 10 day period. Carr has had to consult with alternative counsel and file this motion in pro se

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, and all the Declarations and accompanying Exhibits, all the pleadings and records on file in this action, and upon such further oral and documentary evidence as may be presented at the hearing.

Carr has not entered into any agreement, express or implied, with any other party-in-interest, including the debtor, any creditor or any representative of them, or with any attorney or accountant for any such party-in-interest for the purpose of settlement. Thus, in the interests of justice and the Bankruptcy Court should grant the requested remedies.

## POINTS AND AUTHORITIES

## GOOD CAUSE EXISTS TO GRANT THE CREDITOR'S MOTION

Federal Circuit Court of Appeals interpretation in this area provides valuable insight and guidance, especially in light of the Federal Rules of Civil Procedure.   The applicable standard to be applied when determining whether "excusable neglect" or "good cause" exists in its liberal construction *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir.1974); *Patapoff v. Vollstedt's, Inc.*, 267 F.2d 863, 865 (9th Cir.1959) [*Parke-Chapley Const. Co. v. Cherrington* (7th Cir. 1989) 865 F.2d 907, 910, fn. 5]. Further, Federal Courts have adopted modernization of federal procedure by the relaxation of restrictive rules, which prevent the hearing of cases on their merits. *H. F. Livermore Corp. v. Akteingesllschaft Gebruder L.*, 432 F.2d 689, 691(D.C. Cir.1970); *Tolson v. Hodge*, 411 F.2d 123 (4th Cir.1969); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3d Cir.1951)

-2-

The scope of "excusable neglect" and precisely what acts will justify a finding of "excusable neglect" are somewhat expansive. However, all are evaluated with the with liberal construction, especially in those circumstances where the order of judgment forecloses a trial on the merits of a claim. *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir.1974); *Patapoff v. Vostedt's Inc.*, 267 F.2d 863, 865 (9th Cir.1959). The Supreme Court granted *certiorari* in *Pioneer Inv. Services v. Brunswick Associates*, 507 U.S. 380 (1993) in order that they could consider the issue of what constituted "excusable neglect. Procedurally, the Bankruptcy Court denied the creditor's request for an extension of time to file a creditor claim, after the time within which to file had expired. The trial court's rejection was affirmed by the District Court, and the creditor appealed to the Sixth Circuit, where the decision was reversed. While this case arose from a bankruptcy matter, the applicable Bankruptcy Rule 9006(b)(1) was patterned after FRCP 6 (b). The Supreme Court, in determining which criteria were appropriate to consider when evaluating how best to balance the equities, adopted the test enunciated by the Ninth Circuit Court of Appeals in *In re Magouirk*, 693 F.2d 948 (9th Cir.1982). There, the Ninth Circuit evaluated four considerations in determining whether or not to grant the relief sought. The factors that they contemplated were the following:

(1)   Will the delay prejudice the creditor;
(2)   What will be the length of delay on court administration if the extension is granted;
(3)   Was the delay beyond the control of the person whose duty it was to perform;
(4)   Did the movant act in good faith.

-3-

In *Pioneer, supra*, the attorney for the creditor failed to timely file a proof of claim on behalf of his client. The Court found that the forms might have been confusing, and even though the creditor had also received the same notice with the date specified, the Court found that the mistake of the attorney should not impact the creditor. In so ruling, they held that the parameters of excusable neglect "encompasses both faultless omission and omission caused by carelessness. 113 S.Ct at 1495. In making a finding of excusable neglect to justify the enlargement after expiration of time, the Court stated, "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute ' "excusable neglect"'. it is clear that ' "excusable neglect"' under Rule 6 (b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant...We conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv, supra*, at 1496 , 1498.

Professors Wright and Miller commented on *Pioneer, Inv., supra*, with respect to the application of principles established in that matter to motions seeking relief under FRCP 6 (b). "The Supreme Court interpreted a similar '"excusable neglect" ' standard in the Federal Rules of Bankruptcy Procedure to permit courts to accept late filings caused by inadvertence, mistake, or carelessness; the Court suggested that inadvertence, mistake, or carelessness could constitute " excusable neglect"' under Rule 6 (b) as well. 4A Wright and Miller, *Federal Practice and Procedure*, Section 1165, p. 160 ( 2d ed.1987, 2000 Pocket Part). The Ninth Circuit Court of Appeals noted in *Reynolds v. Wagner*, 55 F.3d 1426, 1429 (9th Cir.), *cert. denied* 516 US 932,

CREDITOR'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE LATE APPEAL
Case #02B48191

116 S.Ct. 339 (1995), in a matter involving failure to timely file notice of appeal , that *Pioneer, supra,* while arising in the context of a bankruptcy proceeding, it's rationale applies equally to Fed. R. App. P 4(a)(5), with respect to the flexible interpretation to be afforded to "excusable neglect." The Ninth Circuit, in *Marx v. Loral Corp.,* 87 F.3d 1049 (9th Cir.1996), a case involving failure to file a notice of appeal within the specified time, held that relief could be granted under the "excusable neglect" standard even where the excusable neglect includes situations in which the failure to comply with a filing date is attributable to negligence. In applying the *Magouirk, supra,* standard to the instant matter, it would appear that the equities would balance in favor of the movant. No prejudice would result were the relief sought granted by the Court. The Court, in *Apache Nitrogen Products, Inc. v. Harbor Ins. Co.,* 145 F.R.D. 674, 682 (D.Ariz.1993) stated that "Delay alone does not constitute prejudice unless it is shown it results in loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." See also, *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1989); *Hawaii Carpenter' Trust Funds v. Stone,* 794 F.2d 508, 513 (9th Cir.1986); 10 Wright and Miller, *Federal Practice and Procedure,* Sections 2694, 2699, at pp 536-537 (1983).

In the present matter, application of these criteria unequivocally compels the inescapable conclusion that the neglect of the Creditor should be deemed *excusable* and the failure to file a notice of appeal within the 10 day period be excused. The Debtor can hardly claim prejudice. While the setting aside of any matter adjudicated through any "default" process or failure to act timely the burden here on the court's administration of its calendar, is minimal, and would not

-5-

CREDITOR'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE LATE APPEAL
Case #02B48191

constitute significant delay. Further, the right of the Creditor to have the matter adjudicated with all safeguards insured by the disposition of due process greatly outweighs any delay occasioned by the granting of the relief herein requested. Finally, the Creditor acted promptly upon discovery of the relevant time period, consulting counsel, and filing the within motion. When considered *in toto* all factors favor the granting of the relief requested.

It is well established that where good cause, meritorious defense, and lack of prejudice can be demonstrated, a sufficient showing will have been made to justify the enlargement after expiration of time. *Apache Nitrogen Products, Inc. V. Harbor Ins. Co.*, 145 F.R.D. 674 (D.Ariz.1993); *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir.1986); *Benny v. Pipes*, 799 F.2d 489, 494(9th Cir.1986); *Mendoza v. Wright Vineyard Management*, 783 F.2d 941, 946 (9th Cir.1986); *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814-815 (9th Cir.1985). The same reasoning should be no less applicable to the matter now before this court.

Date: August 5, 2008

PHYLLIS CARR
Creditor in Pro Per

-6-

CREDITOR'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE LATE APPEAL
Case #02B48191

**PHYLLIS CARR**
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150
Tel/Fax: 1.888.379.6660
Email: ghlaw@pacbell.net

Creditor In Pro Per

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

## CHICAGO DIVISION

|  |  |
|---|---|
| In re: | ) Case No.: 02-B-48191 |
|  | ) Chapter 11 |
| UAL INC. et al. , | ) DECLARATION OF CREDITOR PHYLLIS |
|  | ) CARR IN SUPPORT OF MOTION FOR |
| Debtor | ) LEAVE TO FILE LATE APPEAL |
|  | ) |
|  | ) Date: |
|  | ) Time: |
|  | ) Dept.: |
|  | ) Judge: Eugene Wedoff |
|  | ) Trustee: |

## I, PHYLLIS CARR DO HEREY DECLARE:

1. I am a creditor and appellant in the above named action.

2. I submit this motion for leave to file late appeal based on excusable neglect and good
cause.

3. The motion upon which this appeal is based was heard and denied on July 16, 2008. And
was in regard to an underlying civil case against the debtor herein UAL, Inc which
arguably was settled this year.

4. My attorney was to assist me with filing a notice of appeal and provide me with my
complete file.

5. However, I have not been able to reach my attorney.

6. My attorney informed me she has been very ill.  However, in the last week I learned that for the past several months my attorney has been undergoing treatment for mental disability and was forced to give up her cases because she could not meet her ethical duty to represent her clients due to her mental disability.

7. I have not been able to obtain counsel familiar with the issues who could prepare my case for me so I am filing in prose.

8. My attorney did not file a timely notice of appeal and I therefore request leave to file a late notice of appeal pursuant to the Federal Rules.

9. During the past 12 months, had I been aware of my attorney's mental condition,  I would have obtained alternate counsel

So declared under penalty of perjury.


Dated:  August 5, 2008

PHYLLIS CARR
Creditor in Pro Per

**PHYLLIS CARR**
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150
Tel/Fax: 1.888.379.6660
Email: ghlaw@pacbell.net

Creditor In Pro Per

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

### CHICAGO DIVISION

| | |
|---|---|
| In re:<br><br>UAL INC. et al. ,<br><br>                Debtor | )  Case No.: 02-B-48191<br>)  Chapter 11<br>)  PROPOSED ORDER GRANTING LEAVE<br>)  TO CREDITOR PHYLLIS CARR FILE<br>)  LATE APPEAL<br>)<br>)<br>)<br>)<br>)<br>) |

**GOOD CAUSE SHOWING:**

The court hereby grants Creditor Phyllis Carr's leave to file a notice of appeal and appeal. Said

papers shall be filed as directed

Dated:  August 5, 2008

_____

JUDGE OF THE US BANKRUPTCY COURT

# MULTIPLE CERTIFICATE OF SERVICE

I _____ Dejada Williams _____ declare that:

I am and was at the time of the service hereinafter mentioned, over the age of 18 years and not a party to the within cause. My business address is
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150

On _____8/8/08_____ , I served the following documents:
CREDITOR'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE LATE NOTICE OF APPEAL AND NOTICE OF APPEAL ; PROPOSED ORDER

___x___ By mail, by placing a true copy thereof enclosed for collection and deposit in the normal mailing channels of the Law Offices of Gregory Harper for deposit with the United States Post Office in Berkeley, California, County of Alameda, in a sealed envelope, with postage fully prepaid thereon addressed to:

William Neary U.S. Trustee
**UNITED STATES TRUSTEE (REGION 11)**
219 S. DEARBORN STREET, SUITE 873
CHICAGO, IL 60604

Kurt R. Bockes
Littler, Mendelson
650 California Street, 20th Floor
San Francisco, CA 94108

Gary Vogt
Kirkland, Ellis
555 California Street
San Francisco, California 94104
San Francisco, CA 94108

___ By hand delivery to:
Kurt Bockes
Littler Mendelson
650 California Street, 20th Floor
San Francisco, CA 94108

Gary Vogt
Kirkland Ellis
555 California Street
San Francisco, CA 94108

___ By facsimile, addressed to

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Berkeley, California.

Declarant

**Multiple Certificate of Service**

-1-

**PHYLLIS CARR**
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150
Tel/Fax: 1.888.379.6660
Email: ghlaw@pacbell.net

Appellant/Creditor in Pro Se

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

### CHICAGO DIVISION

In re:

UAL INC. et al. ,

             Debtor

)
)
)
)
)
)
)
)
)
)
)

Case No.: 02-B-48191
Chapter 11

APPELLEE'S DESIGNATION OF RECORD

Appellee, Phyllis Carr, according to the Federal Rules of Bankruptcy Procedure hereby designates the following:

1.   Notice of Motion and Motion to Vacate and Proposed Order

2.   Opposition to the Motion to Vacate

3.   Reply to the Opposition to the Motion to Vacate

4.   Reporter's Transcript of the hearing on the motion on July 16, 2008

5.   Clerk's transcript relevant to the hearing on July 16, 2008.

ISSUES

The Issues on appeal are:

A.   Is the denial of the appellant's motion proper.

B.   Is the underlying conduct of the trustee proper.

C. Appellant reserves other issues.

Appellant has requested a copy of the transcript and forwarded fees to the court reporter.

Respectfully submitted,

Dated: August 14, 2008

PHYLLIS CARR
Creditor/Appellant in Pro Se

**PHYLLIS CARR**
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150
Tel/Fax: 1.888.379.6660
Email: ghlaw@pacbell.net

Appellant/Creditor In Pro Se


# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

## CHICAGO DIVISION


| | |
|---|---|
| In re: | Case No.: 02-B-48191 |
| | Chapter 11 |
| UAL INC. et al. , | |
| | APPELLEE'S ELECTION THAT APPEAL |
| Debtor | BE HEARD BY THE UNITED STATES |
| | DISTRICT COURT |


Appellee, Phyllis Carr, hereby elects, pursuant to 28 U.S.C. § 158 ( c )(1)(B) and L.R.BAP

8TH Cir.8001A(a)(1), to have this appeal heard by the United States District Court for the

Seventh Circuit. The notice of appeal was served on August 13, 2008.


Dated: August 14, 2008

PHYLLIS CARR
Creditor/Appellant in Pro Se

## MULTIPLE CERTIFICATE OF SERVICE

I _____ Kwame Battuta _____ declare that:

I am and was at the time of the service hereinafter mentioned, over the age of 18 years and not a party to the within cause. My business address is
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150

On August 13, 2008 _____ , I served the following documents:
Appellee's Designation of Record and, Appellee's Election to have case heard in US District Court

__x___ By mail, by placing a true copy thereof enclosed for collection and deposit in the normal mailing channels with the United States Post Office in Berkeley, California, County of Alameda, in a sealed envelope, with postage fully prepaid thereon addressed to:

William Neary U.S. Trustee                      Kurt R. Bockes
**UNITED STATES TRUSTEE (REGION 11)**          Littler, Mendelson
219 S. DEARBORN STREET, SUITE 873               650 California Street, 20th Floor
CHICAGO, IL 60604                               San Francisco, CA 94108

Gary Vogt
Kirkland, Ellis
555 California Street
San Francisco, California 94104
San Francisco, CA 94108

____ By hand delivery to:
Kurt Bockes                                     Gary Vogt
Littler Mendelson                               Kirkland Ellis
650 California Street, 20th Floor          555 California Street
San Francisco, CA 94108                         San Francisco, CA 94108

____ By facsimile, addressed to

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Berkeley, California.

Declarant

**Multiple Certificate of Service**

-1-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | **Case No. 02-B-48191** |
| **UAL CORPORATION, et al.,** | ) | **(Jointly Administered)** |
| | ) | |
| **Reorganized Debtors.** | ) | **Honorable Eugene R. Wedoff** |
| | ) | |
| | ) | |

## UNITED'S OBJECTION TO PHYLLIS CARR'S MOTION FOR LEAVE TO FILE LATE APPEAL [Related to Docket No. 17129]

The above-captioned reorganized debtors ("United" or "Debtors") object to creditor Phyllis Carr's ("Carr") motion for leave to file an untimely appeal (the "Motion"). For the reasons described below, the Motion should be denied.

### INTRODUCTION

Carr filed a proof of claim against United, which was resolved pursuant to the terms of a comprehensive settlement agreement and release that was negotiated between the Debtors and Carr's attorney. Unhappy with the results of that settlement, Carr filed a "Motion to Vacate Distribution by Trustee Pursuant to Settlement Agreement by Debtor in Possession United Airlines and Objection to Distribution by Trustee" (the "Motion to Vacate") [Docket No. 17108]. In the Motion to Vacate, Carr claimed that United had somehow misled her and/or her attorney into believing that she would be receiving something other than what was described in the plain language of the settlement agreement. On July 16, 2008, this Court denied the Motion to Vacate, ruling that United acted perfectly appropriately in negotiating and complying with the settlement agreement. (Exhibit A, 7/16/08 Hr'g Tr., p. 3:17-25.) Carr might have a complaint about the quality of legal representation that she received, but United did nothing wrong and there was no reason to void the settlement. (*Id.* at 4:20-5:5, 5:20-6:9.)

Despite the Court's suggestion that Carr "take an appeal to the district court," Carr failed to do so in a timely manner and now seeks leave to file an untimely appeal. Because Carr's motion was filed on August 6, 2008 — well after her ten days to file a notice of appeal had expired — Carr may only do so if she demonstrates "excusable neglect" for her failure to timely appeal. *See* FED. R. BANKR. P. 8002(c)(2). In her Motion and accompanying declaration, Carr appears to suggest that her failure to timely file a notice of appeal (or to request an extension of time) was due to the chronic mental illness of her attorney, Noreen McDermott ("McDermott"), and Carr's resulting inability to move the case forward. However, *the facts* tell a completely different story — namely that Carr's failure to follow the rules were either the result of her attorney's inadvertence or her own ignorance of the rules. Either way, the conclusion is the same: Carr's failure to file a timely notice of appeal was not caused by "excusable" neglect, but by ordinary and thoughtless neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993) (inadvertence, ignorance of procedural rules, or mistakes construing the rules does not constitute excusable neglect).

Carr's Motion should be denied for two reasons:

*First*, Carr's statements as to the reasons for her delay are, at best, highly questionable. Her rationale for failing to file a notice of appeal within the necessary time (as stated in her most recent declaration) cannot be squared with her declaration submitted in connection with her Motion to Vacate. Carr has known about McDermott's alleged mental issues and has had the opportunity to obtain replacement counsel *for months.* Even if Carr's suspicious justifications were blindly accepted as true, they still would not constitute "excusable neglect" entitling her to the desired extension of time.

*Second*, there is no evidentiary support for Carr's factual assertions that might excuse her failure to file her notice of appeal in a timely fashion. Carr has provided this Court with nothing other than her own conclusory statements about McDermott's unspecified "mental illness." This *cannot* satisfy her "burden to demonstrate to [this] [C]ourt that excusable neglect exists." *In re Food Barn Stores, Inc.*, 214 B.R. 197, 200 (8th Cir. B.A.P. 1997).

2

For the reasons described in detail below, United respectfully requests that the Court deny Carr's Motion.

## ARGUMENT

"[T]he burden of establishing excusable neglect is quite onerous." *In re Gehl*, 324 B.R. 756, 759 (Bankr. N.D. Iowa 2005). Although prejudice, good faith, and the length of delay are considered in determining whether a party's neglect of a deadline is excusable, the excuse given for the late filing is "the most important single factor." *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994). Inadvertence, ignorance of the federal rules, or mistakes construing those rules are *not* valid excuses for failure to comply with strict court deadlines. *See Pioneer*, 507 U.S. at 392; *Prizevoits v. Indiana Bell. Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996) ("The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.").

Limiting the scope of what constitutes "excusable" neglect is necessary, particularly in the context of bankruptcy appeals. *See In re Pyramid Energy, Ltd.*, 165 B.R. 249, 252 (Bankr. S.D. Ill. 1994) ("[T]he sort of 'neglect' that could and should have been avoided . . . cannot be characterized as 'excusable.' To rule otherwise would undermine the integrity of the rules and erode the time requirements that have been imposed to ensure prompt administration of bankruptcy appeals."); *Gehl*, 324 B.R. at 759 ("[A] party has an independent obligation to monitor the developments of a case to determine the deadline for appeal."). Of particular importance here, the rules do not change when a party's failure to meet a deadline is attributable to the negligence of a party's attorney because "[u]nfortunately, clients must be held accountable for the acts and omissions of their attorneys." *In re Payne*, No. 03-40475-7, 2004 WL 2187189, at *6 (Bankr. D. Kan. Jul. 19, 2004) (citing *Pioneer*, 507 U.S. at 396). As the record before this Court makes abundantly clear, Carr's neglect was either the result of her own lack of diligence or

3

— as with her misunderstanding of the settlement agreement that she seeks to nullify — the quality of representation that Carr received.

The record before this Court also exposes Carr's factual claims as highly dubious. In support of her "excusable neglect" argument, Carr tells this Court that her delay was caused by her attorney's mental illness, because Carr's attorney was supposed to provide Carr with her complete file and assist her with filing a notice of appeal. (Exhibit B, 8/5/08 Carr Decl. at ¶ 4.) Carr also suggests that she could not have predicted this illness or delay, and that it was of recent vintage: "My attorney informed me she has been very ill. However, *in the last week*, I learned that for the past several months my attorney has been undergoing treatment for mental disability and was forced to give up her cases because she could not meet her ethical duty to represent her clients due to her mental disability." (*Id.* at ¶ 6.)

Respectfully, those statements — made under oath — cannot be truthful. More than two months ago, Carr filed a declaration in support of her Motion to Vacate. In that very declaration, filed on May 22 (almost two months before this Court denied the Motion to Vacate) Carr herself told this Court that: (1) she already knew her attorney had given up her practice due to illness; and (2) she was already in possession of her complete file:

> My attorney has been very ill and has been forced to give up her practice. She has had other attorneys take over her cases due to her illness. I have only recently been able to obtain my file thus necessitating my submitting this petition at this time.

(Exhibit C, 5/22/08 Carr Decl. at ¶ 32.) In fact, as Carr informed the Court during her briefing on the Motion to Vacate, it was Carr's knowledge of McDermott's illness that caused Carr to file her Motion to Vacate, *pro se*, so long after signing the settlement agreement and receiving her distribution under United's Plan of Reorganization. Given that the issues purportedly causing

4

the delayed appeal were already known to Carr when she filed the Motion to Vacate, any neglect in appealing that decision due to the same issues cannot possibly be "excusable."

The bottom line is that Carr's failure to preserve her right to appeal (whether by proceeding *pro se* or by retaining alternate representation) was her own fault. She had her complete file, and knew of her attorney's illness, for months prior to the beginning or expiration of her notice of appeal deadline. However, even if attorney illness was the cause of Carr's missed deadline here (and it was not), it would not constitute "excusable neglect." Generally, illness can excuse a late appeal only if it was sudden and unanticipated. *In re Brown,* 313 B.R. 693, 699-700 (Bankr. W.D. Mich. 2004) (citing cases). McDermott's "alleged mental incapacity does not resemble the sudden, unexpected illnesses that courts have deemed grounds for 'excusable neglect.'" *Id* at 700. Carr herself knew about this illness for months. McDermott's inability to assist Carr with the filing of a notice of appeal in a timely manner was foreseeable, thus rendering Carr's neglect inexcusable. *In re Aponte,* 91 B.R. 9, 12 (Bankr. E.D. Pa. 1988) ("When counsel's inability to act is the result of events that could reasonably have been anticipated, courts will not find excusable neglect.").

Finally, even if Carr's legal argument on "excusable neglect" was correct (and it is not), there is no evidence to support Carr's factual contentions. Put simply, there is nothing in the record to substantiate Carr's assertion that attorney illness — rather than the quality of Carr's representation or Carr's own inexperience — was the root cause of her failure to appeal on a timely basis. The absence of such evidence dooms her attempt to appeal untimely even if the facts themselves could add up to excusable neglect (and they do not). *See In re President Casinos, Inc.,* No. 02-53005-659, 2008 WL 2705502, at *4 (Bankr. E.D. Mo. Jul. 3, 2008) (where creditor fails to show that counsel's illness was of "such character and magnitude that [he/she]

5

was both physically and mentally incapacitated during the crucial period of time," there can be no finding of excusable neglect); *In re Whitaker*, 236 B.R. 901, 2005 WL 1386479, at *2-3 (6th Cir. B.A.P. Jun. 3, 2005) (illness must be "so physically and mentally disabling that counsel is unable to file the appeal and is not reasonably capable of communicating to co-counsel his inability to file"); *In re Massaro*, 235 B.R. 757, 765-66 (Bankr. D.N.J. 1999) (no finding of excusable neglect where a party "failed to submit any documentation to support his claim of mental incapacity").

## CONCLUSION

For the foregoing reasons, Carr's motion for leave to file an untimely appeal should be DENIED.

Dated: Chicago, Illinois
August 18, 2008

Respectfully submitted,

 /s/  Michael B. Slade
Marc Kieselstein (ARDC No. 6199255)
David R. Seligman (ARDC No. 6238064)
Michael B. Slade (ARDC No. 6274231)
Adam J. Goldstein (ARDC No. 6289591)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601

Counsel for the Reorganized Debtors

6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UAL Corporation, | ) | No. 02 B 48191 |
| | ) | 05 A 02806 |
| | ) | Chicago, Illinois |
| | ) | 10:00 a.m. |
| Debtor. | ) | July 16, 2008 |

TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE EUGENE R. WEDOFF

APPEARANCES:
For the Debtors:            Mr. Erik Chalut;
                            Mr. Micah Marcus;


For the City of
Los Angeles:                Mr. Jeffrey Tomasevich;
Appearing Telephonically:
For the City of
Los Angeles:                Mr. John Tavetian;
                            Mr. Marc Cohen;


Court Reporter:             Amy Doolin, CSR, RPR
                            U.S. Courthouse
                            219 South Dearborn
                            Room 661
                            Chicago, IL  60604.

```
 1                  THE CLERK:  UAL Corporation,
 2    02 B 48191, with related adversary, United Air Lines
 3    versus City of Los Angeles, 05 A 2806.
 4                  THE COURT:  Okay.  I understand we
 5    have appearances by telephone.
 6                  Are there appearances by telephone?
 7                  MR. TAVETIAN:  Yes, Your Honor.
 8    (inaudible.)
 9                  THE COURT:  This won't work.  You're
10    completely inaudible.
11                  MR. TAVETIAN:  Is that better?
12                  THE COURT:  That's much better.  Go
13    ahead.
14                  MR. TAVETIAN:  Okay.  I'll do that.
15                  John Tavetian, T as in Tom, a-v, as in
16    Victor, e-t, as in Tom, for City of Los Angeles.
17                  THE COURT:  Okay, Mr. Tavetian.
18                  MR. COHEN:  And Marc Cohen of Kaye
19    Scholer.
20                  THE COURT:  Okay, Mr. Cohen.  You
21    remain virtually inaudible, but I was able to get
22    your appearance.  If you need to make any statements
23    for the record, I would urge you to try to get a
24    better connection or to speak more loudly.
25                  Appearances in the courtroom.
```

ccf9fd34-4332-4766-aa4c-f38b384c7aef

1              MR. MARCUS:  Your Honor, Micah Marcus

2     for United.

3              MR. TOMASEVICH:  Jeffrey Tomasevich,

4     Kaye Scholer, for the City of Los Angeles.

5              THE COURT:  Okay.  The first matter on

6     the call today is a motion of Phyllis Carr

7     essentially objecting to a settlement that was

8     reached between herself and United.  And this motion

9     is going to be denied.

10              The settlement was very clear that the

11     agreed amount of Miss Carr's claim would be paid as

12     an allowed general unsecured claim pursuant to the

13     terms of the plan and that would result in a

14     distribution of stock in a particular amount, which

15     would not necessarily be the value of the allowed

16     general unsecured claim.

17              All of that was very clear in the

18     documentation.  If there is a misunderstanding, the

19     misunderstanding was one that is simply a result of

20     the quality of the representation that was given to

21     Ms. Carr.  She may have a claim against her attorney,

22     but she has no claim against United.  United did

23     nothing wrong in entering into or complying with the

24     settlement that was reached.  And, therefore, this

25     motion is denied.

1          MR. CHALUT:  For the record, Erik

2   Chalut.  Thank you, Your Honor.

3               (Brief interruption.)

4          THE COURT:  I can hear you now.

5          MR. COHEN:  Okay, Judge.

6          THE COURT:  The background music was

7   also appreciated.

8               So that's denied for the reasons

9   stated on the record.  Next is a motion to --

10         UNIDENTIFIED SPEAKER:  Hello.  Hello.

11         THE COURT:  Yes.

12         UNIDENTIFIED SPEAKER:  Hello.

13         THE COURT:  We can hear you.  Do you

14  want to enter an appearance?

15         UNIDENTIFIED SPEAKER:  This is for

16  Phyllis Carr.

17         THE COURT:  Apparently you missed the

18  ruling that I just gave?

19         UNIDENTIFIED SPEAKER:  Yes.

20         THE COURT:  Okay.  The ruling is that

21  the motion is denied.  And very briefly, the motion

22  is denied for the reason that United did nothing

23  improper in either entering into or complying with

24  the settlement agreement that was reached.  To the

25  extent that there was any misunderstanding, the

1    misunderstanding was on the part of Miss Carr's

2    counsel, having nothing to do with United.

3                    The settlement is clear on its face.

4    United complied with the settlement.  For that

5    reason, the motion is denied.

6                    UNIDENTIFIED SPEAKER:  Well, how is it

7    United complied with the settlement?  I mean, does

8    80,000 equal the 12,000 that was paid out?

9                    THE COURT:  What was the term of the

10   settlement was an allowed general unsecured claim of

11   $80,000.  The $80,000 general unsecured claim was

12   paid pursuant to the terms of United's confirmed

13   plan.  That called for a certain amount of United

14   stock to be distributed on account of the claim, and

15   that's what United did.  Again, that's clear from the

16   settlement.  And what United did was appropriate.

17                   UNIDENTIFIED SPEAKER:  But, Your

18   Honor, it didn't appear clear in 80,000 is what was

19   agreed to to be paid according to the plan.

20                   THE COURT:  That is not correct.  The

21   plan did not provide for 100 percent cash payment of

22   allowed general unsecured claims.  It provided for a

23   mechanism of a distribution of a certain amount of

24   stock.  And to the extent there was a

25   misunderstanding there, it was not caused by anything

1    that United did, and it was not caused by any

2    unclarity in the settlement documentation.

3              The settlement calls for the allowance

4    of an unsecured claim in the amount of $80,000.  It

5    does not call for a cash payment of $80,000.  And,

6    counsel, if you were the one who was involved in

7    this, you may have misunderstood that, but that's

8    your problem and not a problem of anything that

9    United did.  The motion is denied.

10             UNIDENTIFIED SPEAKER:  Well, Your

11   Honor, the thing about it --

12             THE COURT:  I don't think that any

13   further discussion of this point is going to be

14   helpful.  If you disagree with the ruling that I

15   made, I think your recourse is to take an appeal to

16   the district court.

17             UNIDENTIFIED SPEAKER:  Thank you, Your

18   Honor.

19             THE COURT:  Okay, next is the debtors'

20   motion to compel a claimant to have counsel enter an

21   appearance or deny its claim.  That's not the right

22   procedure.  What happens here is that the claim

23   objection has got to be pursued.  If there's a

24   nonappearance by the claimant in response to the

25   claim objection, and the claim objection states a



**PHYLLIS CARR**
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150
Tel/Fax: 1.888.379.6660
Email: ghlaw@pacbell.net

Creditor In Pro Per

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

### CHICAGO DIVISION

In re:

UAL INC. et al. ,

        Debtor

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 02-B-48191
Chapter 11
DECLARATION OF CREDITOR PHYLLIS
CARR IN SUPPORT OF MOTION FOR
LEAVE TO FILE LATE APPEAL

Date:
Time:
Dept.:
Judge: Eugene Wedoff
Trustee:

**I, PHYLLIS CARR DO HEREY DECLARE:**

1. I am a creditor and appellant in the above named action.

2. I submit this motion for leave to file late appeal based on excusable neglect and good cause.

3. The motion upon which this appeal is based was heard and denied on July 16, 2008. And was in regard to an underlying civil case against the debtor herein UAL, Inc which arguably was settled this year.

4. My attorney was to assist me with filing a notice of appeal and provide me with my complete file.

5. However, I have not been able to reach my attorney.

6. My attorney informed me she has been very ill. However, in the last week I learned that for the past several months my attorney has been undergoing treatment for mental disability and was forced to give up her cases because she could not meet her ethical duty to represent her clients due to her mental disability.

7. I have not been able to obtain counsel familiar with the issues who could prepare my case for me so I am filing in prose.

8. My attorney did not file a timely notice of appeal and I therefore request leave to file a late notice of appeal pursuant to the Federal Rules.

9. During the past 12 months, had I been aware of my attorney's mental condition, I would have obtained alternate counsel

So declared under penalty of perjury.

Dated: August 5, 2008

PHYLLIS CARR
Creditor in Pro Per

**PHYLLIS CARR**
2039 Shattuck Avenue, Suite 304
Berkeley, CA 94704-1150
Tel/Fax: 1.888.379.6660
Email: ghlaw@pacbell.net

Creditor In Pro Per


## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION


| | |
|---|---|
| In re:<br><br>UAL INC. et al. ,<br><br>        Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 02-B-48191<br>Chapter 11<br>DECLARATION OF CREDITOR PHYLLIS CARR IN SUPPORT OF MOTION TO VACATE DISTRIBUTION OF TRUSTEE<br><br>Date: July 16, 2008<br>Time: 09:30 A.M.<br>Dept.: TBD<br>Judge: Eugene Wedoff<br>Trustee: William Neary |


## I, PHYLLIS CARR DO HEREY DECLARE:

1. I am a creditor in the above named action.

2. I submit this motion to vacate distribution by Trustee and object to the distribution made by the Chapter 11 bankruptcy Trustee allegedly pursuant to a settlement agreement of litigation between me and debtor United Airlines [hereinafter referred to as UAL].

3. My pre-petition bankruptcy claim encompassed damages for back wages and benefits, future wages and benefits, costs attorneys' fees and compensatory and punitive damages to resolve all my claims.

4. My unsecured, pre-petition claim was for $5,000,000.[1]

---

[1] There was also a post-petition claim; however, that claim is not pertinent to the instant motion.

5. However, the claim pertinent to this motion is the pre-petition claim.

6. The complaint in my lawsuit asserts I was discriminated against after suffering a disabling injury at during the course of my employment and, that UAL failed to provide reasonable accommodation, failed to enter into an interactive process with me, retaliated against me for voicing my complaints and was defamed by UAL when I sought employment.

7. On  November 29, 2001, I filed a timely claim with the Bankruptcy Court regarding my lawsuit for disability discrimination, including allegations that UAL failed to provide reasonable accommodation, failed to enter into an interactive process with me, retaliated against me for voicing my complaint and defamed me.

8. My claim was an unsecured pre-petition claim.

9. On or about February 2, 2008 the attorneys for UAL submitted a settlement proposal to me that was to settle all of my cases.

10. The original amount offered to me by UAL's attorneys was $50,000 payable in UAL stock. My attorney negotiated with UAL and we agreed I would receive $80,000 in UAL stock. My attorney and I and UAL's attorney understood the settlement was  payment of my claim for $5,000,000.

11. My attorney and I understood this agreed amount reduced in accordance with the Confirmation Order and the Plan, to a reduction of 4 to 8 cents on the dollar of my $5,000,000 creditor's claim.

12. After months of negotiations over the terms, UAL and I accepted the terms of the Settlement Agreement.

13. I signed the Settlement Agreement on January 23, 2008 and waited for a disbursement of the stock.

14. I recognize my creditor's claim of $5,000,000 would be reduced as I was an unsecured, pre-petition creditor at a rate of 4-8 cents on the dollar. However, what my attorney and I



did not anticipate and what UAL and its attorneys failed to tell me and my attorney, was that the $80,000 in stock did not reflect the actual value of stock I was to receive.

15. First, UAL unilaterally reduced the amount of my $5,000,000 creditor's claim. Then UAL had the trustee further reduce the value of my $5,000,000 claim by paying $12,000 in stock of which neither party contemplated. Neither UAL nor its attorneys ever told me or my attorney that this was the method UAL would use to calculate the actual value of the settlement, despite the fact that there were many opportunities to do so, including a 3 page letter describing how the settlement would work.

16. In retrospect, it is clear to me the lack of information about the mechanics of the settlement was calculated to mislead me and my attorney into entering into a Settlement Agreement that was vague, fraudulent, misleading and inexact as to performance by UAL.

17. Moreover, during negotiations, my attorney repeatedly requested clarification from UAL's counsel about how the stock was to be disbursed, and when the stock was to be disbursed. UAL's attorney said that he did not know the details, and that the stock would be distributed according to certain "cycles." UAL's counsel told me and my attorney not to worry, that the trustee would pay the settlement and that we would get our $80,000 soon.

18. Additionally, he stated the cycle was generally no more than two weeks long, and that the disbursement was typically 2-3 days. However, he wouldn't tell me anything else or my attorney, even when she asked for more information.

19. When I had my attorney ask about the disbursement of the stock, UAL's counsel would only say that the information was passed on to the proper people. In another conversation, my attorney informed me when discussing the settlement amount, stated to UAL's counsel that the deal was $80,000 worth of stock and UAL's counsel said, "Yes."

20. In addition to the compensation, the parties discussed various other issues, including



UAL agreeing to provide me and my counsel separate IRS 1099 forms and  providing separate payments for the $80,000 in stock, reflecting the percentages in their agreement;

21. I agreed not to apply for work for any of the UAL companies.

   I agreed that any potential arbitrators and mediators would be retired judges;

22. And additionally, as a condition precedent to settlement I had to dismiss my lawsuits in state and federal court, which  I did in reliance on the fact that UAL told me and my lawyer we would be paid $80,000 pursuant to the bankruptcy plan and the terms of the Settlement Agreement.

23. My revocation period under the Older Workers Benefit Protection Act lapsed and a few days later, UAL's in-house counsel signed the Settlement Agreement.

24. On March 6, 2008, I received a notice from Computer Share Trust Company, N.A. [hereinafter referred to as Computershare] via US mail, the disbursement of the stock occurred on February 19, 2008.

25. On February 28, 2008 my attorney and I intended to liquidate the stock which, on February 20, 2008 was trading at $ 37.14 per share.  However, on March 6, 2008 when I was finally notified, the stock was trading at $28.31 per share.

26. Most importantly, on March 6, 2008, when I finally received the notice via U.S. Mail from Computershare, my attorney and I learned that the stock disbursement was not $80,000.  The total disbursement amount was approximately $12,000.

27. After verifying this information with Computershare, the company administrating the disbursement of the stock, my lawyer counsel contacted UAL's lawyer to tell him the disbursement amount of $80,000 had not been satisfied, and that UAL had not provided notice of the disbursement until 3 weeks after the disbursement date and, as a result, we did not get the benefit of the higher amount.

28. UAL's counsel informed my lawyer the $12,000 was the correct amount because I was an unsecured pre-petition creditor.

29. Consistent with how UAL has treated me thus leading to the underlying lawsuit, at no time had UAL or its lawyer explained that the $80,000 in stock was not the real number. At no time did UAL inform me that the amount of my claim (for $5,000,000) had been unilaterally reduced by UAL.

30. My lawyer and I understood that the only reduction of my claim had been undertaken in accordance with the Plan, which provided that unsecured, pre-petition claims would be reduced to 4-8 percent of the original $5,000,000 claim.

31. I have not entered into any agreement, express or implied, with any other party-in-interest, including the debtor, any creditor or any representative of them, or with any attorney or accountant for any such party-in-interest for the purpose of settlement.

32. My attorney has been very ill and has been forced to give up her practice. She has had other attorneys take over her cases due to her illness. I have only recently been able to obtain my file thus necessitating my submitting this petition at this time.

So declared under penalty of perjury.

Dated: May 22, 2008

PHYLLIS CARR
Creditor in Pro Per